NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-CV-136-JBC

HERBERT CHARLES REGISTER                                       PETITIONER

VS:                 **MEMORANDUM OPINION AND ORDER**

DIRECTOR HARLEY LAPPIN, ET AL.                          RESPONDENTS

\* \* \* \* \* \*

Herbert Charles Register, who is presently confined at the Federal Medical Center (FMC) in Lexington, Kentucky, has submitted a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

The matter is before the court for screening.[1] 28 U.S.C. § 2243. During screening, the allegations in the petition are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). However, the court may dismiss the petition at any time, or make any such disposition as law and justice require, if it determines that the petition fails to establish adequate grounds for relief. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

CLAIMS

The petitioner claims that in calculating his security level, the BOP has used

---

[1] This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983).

information in his presence report ("PSR")[2] which is known to be wrong, thereby violating the Privacy Act, the petitioner's due process rights, and its own policy in Program Statement 5800.11.

## ALLEGATIONS IN THE PETITION

On November 16, 1995, a jury in the United States District Court for the Middle District of Florida convicted the petitioner and accomplices of several drug crimes in *United State of America v. Herbert Charles Register*, No. 93-305-CR-T-17. The convictions of all of the defendants were affirmed in *United States v. Herbert Charles Register, et al.*, 182 F.3d 820 (11th Cir. 1999), *cert. denied*, 530 U.S. 1250 (2000). This petitioner later brought a motion to vacate pursuant to 28 U.S.C. § 2255, which was denied in 2002. He apparently took no appeal of those claims.

Petitioner alleges that prior to his sentencing on April 25, 1996, his counsel made "many objections" to the PSR. Petitioner provides a few pages from the PSR and the entirety of an addendum to it. On a page of the PSR showing a base offense level of 34, the probation officer described Register and his son, a co-defendant, entering the cell of a witness named Donald Bean and "punching and kicking Bean. [Herbert Register] threatened to kill Bean if he testified at his trial." Exhibit [hereinafter "Ex."] B, at ¶ 45.

Based upon the incident with Bean, the probation officer called for an obstruction-of-justice adjustment as follows:

> USSG § 3C1.1 directs that if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the

---

[2] A PSR is often referred to as a PSI, which is short for presentence investigation report. The two terms are used interchangeably.

2

offense level by 2 levels. . . . [A] two level increase appears to be warranted. *Id.* at ¶ 51. He also urged a two-level increase for the petitioner's possession of firearms in furtherance of his drug trafficking and trafficking conspiracy. According to the officer's calculation, the petitioner's total offense level was 38. *Id.*

An addendum by the same probation officer shows that the instant petitioner did, indeed, raise multiple objections to the PSR, including objections to the 2 two-level enhancements. As to Petitioner's objection to the obstruction-of-justice adjustment, the officer wrote as follows:

> It is the Probation Office's position that the information contained in Paragraph 45 is accurate as supplied by the government and the enhancement is appropriate. The government is prepared to provide testimony is support of the obstruction enhancement.

*Id.*, attached addendum, at ¶ 3.

Register states that the court held a "lengthy evidentiary hearing" on the objections at his April 25, 1996 sentencing hearing, and he attaches copies of pages 2, 40, and 59, of the transcript of that hearing. He has highlighted the Judge's ruling, "I will disallow the obstruction of justice as to both." Ex. A. Petitioner also provides a copy of the criminal judgment, which contains the following:

> The Court adopts the factual findings and guideline application in the presentence report except the Court determined that the enhancement for obstruction under USSG 3C1.1 does not apply.

Ex. C, at 6. The court determined that the total offense level was 36, the criminal history category II, and the imprisonment range 210 to 262 months. *Id*. Register was sentenced to 222 months' incarceration and 5 years of supervised release.

Petitioner Register claims that his security level with the BOP is a 5, which qualifies him to be in a minimum security facility, but the BOP is using the PSR's erroneous total offense level of 38, rather than the sentencing court's level 36 determined orally at hearing and in the judgment, in order to keep him in a higher security prison. Additionally, he alleges, this information is now being used to keep him separate from where his co-defendant son is incarcerated; will continue to be used, as in deciding whether the petitioner may go to a halfway house; and could be used again at any time "to deny Petitioner of any opportunities that may arise. . . ." Petitioner contends that either the court failed to order the probation office to correct the PSR to show the level 36, not 38, or alternatively, the probation office was ordered to correct the PSR but failed to do so.

The petitioner pursued the matter through the BOP's administrative remedy system, arguing that the sentencing court's judgment and oral pronouncement should be accepted as correct and the PSR should be corrected to reflect the proper level offense, *i.e.*, 36. He does not attach all of his or the BOP's documents from the administrative proceeding, but does attach his final appeal to the BOP's national office and the response he received denying his appeal on December 15, 2007.

Having exhausted the administrative process, Register has now come to this court. As he did in the administrative process, the petitioner cites to case law, asks that the court's oral pronouncement and judgment be controlling as to facts, and requests that his PSR be corrected.

## DISCUSSION

The petitioner's first claim is based on the Privacy Act. This legislation requires federal agencies to maintain records used in making determinations "with such accuracy,

4

relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination [about the individual]."  5 U.S.C. § 552a(e)(5). Section 552a(d) allows individuals access to agency records about themselves and to request the amendment of records "they believe to be inaccurate, irrelevant, untimely, or incomplete." *Id.*  Subsections (g)(1)(A) and (C) authorize civil actions to enforce the amendment and accuracy requirements.  In addition, subsection (g)(4) provides for monetary damages, costs, and attorneys' fees where the agency is shown to have acted intentionally or willfully. An agency may be liable for "actual damages sustained by the individual as a result of the refusal or failure" to maintain accurate records and "consequently a determination is made which is adverse to the individual."  5 U.S.C. § 552a(g)(1)(C) and (g)(4)(A).

The Privacy Act is not, however, "a vehicle for amending the judgments of federal officials or ... other[s] ... as those judgments are reflected in records maintained by federal agencies." *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C.Cir.1992).  In particular, it has specifically and consistently been held that the Privacy Act is not available to "challenge ... the professional judgment of BOP officials in assessing points for purposes of establishing a prisoner's custody classification."  *Doyon v. Dep't of Justice*, 304 F.Supp.2d 32, 35 (D.D.C.2004) (citing *Kleiman*, 956 F.2d at 337-38).

The instant petitioner is clearly attempting to change the higher classification which the BOP assessed.  Therefore, consistent with the foregoing authority, he may not use the Privacy Act to effect a change in the BOP's assessment.  *See also Murphy v. DeRosa*, 2005 WL 2475704, *6-7 (D.N.J. 2005) (not reported in F.Supp.2d) (summarily dismissing § 2241 petition seeking "correction," which was actually a  challenge to the BOP's use of

5

the PSR to determine the petitioner's custody classification, prison designation and participation in prison programs).

There are two more reasons that the instant petitioner's Privacy Act claim cannot proceed further. In 5 U.S.C. § 552a(j)(2), the Act provides that an agency may promulgate a system of regulations to exempt any part of its records from certain parts of the Act, and the BOP has done just that. A BOP prisoner's PSR and all information pertaining to his security level and custody classification are maintained in the Inmate Central Records System, a system which has been exempted from subsections (d),(e)(5) and (g) of the Privacy Act by regulation. *See* 28 C.F.R. § 16.97; *Rodriguez v. Bureau of Prisons*, 2007 WL 779057 (D.C.C. 2007) (slip op.).

Additionally, even were the BOP's Inmate Central Records not exempt, prisoners are not entitled to a correction of the documents kept by the BOP. The Privacy Act itself permits suits only for damages for violations, not for injunctive relief. *See Taylor v. Sniezek*, 2005 WL 1593671 at *2 (N.D. Oh. 2005) (not reported in F.Supp.2d) (citing 5 U.S.C. §552a(g)(1)(C), and *Risley v. Hawk*, 108 F.3d 1396, 1397 (D.C. Cir. 1997) (per curiam)). Amendment is not available to Petitioner under the Privacy Act.

Nor does Petitioner Register state a claim based on any other federal statute. To the contrary, it is by statute that broad discretion in the placement of prisoners is granted to the Attorney General, who has delegated that discretion to the Director of the BOP. *See* 18 U.S.C. § 4081; 28 C.F.R. § 0.96. The placement of prisoners within the federal prison system is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum v. Fano*,

427 U.S. 215, 225 (1976). The classification procedure is totally within that discretion. *See also Walker v. Hughes,* 558 F.2d 1247, 1252 (6th Cir.1977) ("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges.").

The instant petitioner's constitutional claim, that his due process rights have been violated by the use of the PSR to arrive at his custody level and prison assignment, also fails. An inmate does not have a liberty interest in assignment to a particular institution or to a particular security classification. *See Wilkinson v. Austin,* 125 S.Ct. 2384, 2393 (2005) (holding that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983); *Meachum v. Fano*, 427 U.S. at 224-25; *Montayne v. Haymes,* 427 U.S. 236, 243 (1976); *Moody v. Daggett,* 429 U.S. 78, 88 n.9 (1976) (noting that prison classification and eligibility for rehabilitative programs in the federal prison system are matters delegated by Congress to the "full discretion" of federal prison officials and thus implicate "no legitimate statutory or constitutional entitlement sufficient to invoke due process").

The Supreme Court has directed that a liberty interest in the conditions of a prisoner's confinement is implicated only where the prison's action creates "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or creates a "major disruption in his environment." *Sandin v. Connor,* 515 U.S. 472, 484-86 (1995). In *Sandin*, the petitioner's placement in administrative segregation for 30 days did


not meet either standard so as to trigger due process concerns.  Nor is either present in this case.

Since then, the Sixth Circuit has consistently adhered to these standards.  *See Jones v. Baker,* 155 F.3d 810, 812-18 (6th Cir.1998) (confinement in administrative segregation for two-and-one-half years did not constitute an atypical and significant hardship); *Argue v. Hofmeyer,* 80 Fed. Appx. 427, 429 (6th Cir. 2003) (prisoner's confinement for twenty-three hours a day, Monday through Friday, did not violate the Constitution, as it did not impose an atypical and significant hardship) (citing *Sandin,* 515 U.S. at 484-86).

The Supreme Court itself has found only one circumstance which meets its standard of being an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" so as to implicate the due process clause, and that is a prisoner's transfer to a "supermax" facility, where "almost all human contact is prohibited, even to the point that conversation is not permitted from cell to cell; the light, though it may be dimmed, is on for 24 hours; exercise is for 1 hour per day, but only in a small indoor room." *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005).

The differences between this petitioner's case and the prisoner's situation in the *Wilkinson* case are clear.  First, the instant petitioner is not being transferred or classified to a "supermax" facility.  The confinement complained of in a medium rather than low security facility is also nowhere near the extreme conditions of the "supermax" facility in *Wilkinson v. Austin*.  Nor does Register's confinement affect his parole eligibility.  Because his prison conditions are not "outside the realm of what is to be expected of prison life"

(*Sandin,* 515 U.S. at 485), this petitioner fails to state a due process claim. "[P]rocess is not an end in itself." *Argue v. Berghuis*, 2006 WL 250696, *6 (W.D.Mich.,2006) (not reported) (citing *Olim,* 461 U.S. at 250).

Like Argue, the instant petitioner fails to state a claim under the due process clause. *See also Bell v. Wilkinson*, 145 Fed.Appx. 169, 171 (6th Cir. 2005) (not selected for publication) (affirming summary dismissal of a due process claim about a transfer and finding *Wilkinson v. Austin* inapposite, as no supermax institution was involved). Therefore, the court finds that the U.S. Constitution's due process principles are not offended in the instant case, where the BOP has merely placed Inmate Register in a prison which has one level higher security rating than the inmate would wish. Further, Register's current placement and separation from his son are the only detriments which he alleges. They are clearly not atypical and further, the rest of his purported hardships are only anticipated.

This result is also consistent with *Pastrana v. Nalley*, 2007 WL 952061 (N.D.N.Y. 2007) (slip op.), where the sentencing court did *not* take into account the PSR's obstruction-of-justice notation; the BOP used the erroneous information to determine the prisoner's custody classification; and his classification made him ineligible for a BOP 500-hour drug treatment program, which could result in a one-year reduction in his sentence. Even considering the clear error and the possibility that the prisoner could not obtain earlier release, that district court found no due process violation and dismissed the § 2241 petition. This court concludes that the instant petitioner similarly fails to state a statutory or constitutional claim upon which relief can be granted and dismissal is appropriate.

None of the *pro se* petitioner's cited cases support his position. Most are inapposite. For example, he cites *United States v. Ridgeway*, 319 F.3d 1313,1315 (11th Cir. 2003), for the proposition that when an orally imposed sentence differs from the written order of judgment, the oral sentence controls. However, *Ridgeway* was a direct appeal of one of the conditions of supervised release imposed by the sentencing court, and there was a discrepancy between the oral ruling imposing the complained-of condition and the written judgment which omitted it. *Ridgeway* simply does not apply to the instant situation. Also, Register cites *Austin v. Wilkinson*, 372 F.3d 346 (6th Cir. 2004), to support his liberty interest/due process claim, but that opinion was reversed by the Supreme Court's *Wilkinson v. Austin* decision discussed above.

Finally, the petitioner claims that the BOP violated its own policy, as stated in Program Statement ("PS") 5800.11. *Inmate Central File, Privacy Folder, and Parole Mini-Files*. It provides that an inmate may challenge the information in his or her Central File. If he/she provides supporting information, the BOP staff are required to act as follows:

> . . . [S]taff shall review the alleged error(s) and take reasonable steps to ensure the information is correct.
>
> For example, if an inmate challenges information in the Presentence Investigation Report (PSI), staff should inform the appropriate U.S. Probation Office (USPO) in writing of the disputed information, and request that a written response also be provided. **USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigation Report after sentencing since it is a court document**.

PS 5800.11 at 19 (emphasis in the original). The program statement goes on to dictate certain procedures "[i]f the USPO subsequently reports that the challenged information, or some part thereof is not accurate." *Id*.

10

Petitioner Register claims that he supplied the trial court's order disallowing the obstruction-of-justice enhancement, but local BOP staff purportedly pointed to his objections in the PSR addendum and responded, "[T]he Probation Officer's position was that the information was accurate.  Therefore, it can and will be used on your Transfer Request."  The petitioner alleges that none of the BOP officials in the entire administrative process took reasonable steps to ensure the accuracy of his records – he contends that no one looked at the judge's order.

Petitioner Register's exhibits do not support this contention.  The Administrator for National Inmate Appeals denied Register's appeal and explained its decision as follows:

> Our review indicates the Warden and Regional Director adequately responded to the issue raised in your appeal.  . . .
>
> Our investigation revealed that, in response to your challenge to information in your PSI, you were informed in writing by the U.S. Probation Office that the information in your PSI was adopted as fact and no changes will be made.  The Bureau of Prisons does not have the authority to make changes to the PSI.  Therefore, we concur with the responses provided and find them appropriate.

Ex. D.

This court finds that the BOP took reasonable steps to ensure the accuracy of the information in this inmate's central file.  Consistent with policy, the BOP contacted the U.S. Probation Office; received a written response; put that response in Register's central file; and truthfully told the petitioner that the BOP cannot change a PSR.  The BOP officials have done all that their policy and federal law require.

Accordingly, **IT IS ORDERED** as follows:

(1) Herbert Charles Register's petition for writ of habeas corpus pursuant to 28

U.S.C. § 2241 is **DENIED**, *sua sponte*; and

(2) the action herein will be **DISMISSED** from the docket of the court, and judgment shall be entered contemporaneously with this memorandum opinion and order in favor of the respondent.

Signed on July 6, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY